UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


LARRY PRIDE,

                    Petitioner,

v.                                    Case No. 3:09-cv-323-J-34MCR


SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner Larry Pride initiated this action by filing a <u>pro
se</u> Petition for Writ of Habeas Corpus (Doc. #1) under 28 U.S.C. §
2254 on April 3, 2009, pursuant to the mailbox rule.  Pride is now
proceeding on his Amended Petition (Doc. #13), in which he
challenges a 2005 state court (Duval County, Florida) judgment of
conviction for sale or delivery of cocaine on seven grounds.
Respondents have submitted a memorandum in opposition to the
Petition.  <u>See</u> Respondents' Response to Habeas Petition (Response)
(Doc. #31) with exhibits (Resp. Ex.).  On July 1, 2009, the Court
entered an Order to Show Cause and Notice to Petitioner (Doc. #14),
admonishing Petitioner regarding his obligations and giving

Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on April 1, 2010. See Petitioner's Reply to Respondents' Response to Habeas Petition (Reply) (Doc. #36). This case is ripe for review.

## II. Procedural History

On January 20, 2005, the State charged Petitioner with two counts of sale or delivery of cocaine and possession of cocaine (count three). Resp. Ex. B at 8-9. Counts one and two were tried separately.[1] Resp. Ex. A at 7. After jury selection, Pride proceeded to a jury trial on count one (relating to the December 30, 2004 sale). Resp. Ex. C, Transcript of the Jury Trial (Tr.). At the conclusion of the trial, a jury found Pride guilty of sale or delivery of cocaine. Resp. Ex. B at 39, Verdict; Tr. at 160. On September 6, 2005, the trial court sentenced Pride, as a habitual felony offender, to twenty-five years of imprisonment, to run consecutively to the twenty-year sentence of imprisonment imposed for count two. Resp. Ex. B at 45-50, Judgment; 78-92, Transcript of the Sentencing Hearing (Sentencing Tr.). The State announced a nolle prosequi for count three. Sentencing Tr. at 86.

---

[1] Petitioner challenges his conviction relating to count one (the December 30, 2004 sale) in the instant case. He challenges his conviction concerning count two (the January 2, 2005 sale) in Case No. 3:09-cv-519-J-32JBT. Pride was tried separately on counts one and two and also appealed those convictions separately. At the post-conviction stage of the proceedings, he filed separate motions, but appealed the trial court's denial in one appeal.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that the trial court erred by admitting a photograph, allegedly of Pride, into evidence (ground one), and the prosecutor, on cross-examination, went beyond the scope of direct examination (ground two). Resp. Ex. F. The State filed an Answer Brief, <u>see</u> Resp. Ex. G, and Petitioner filed a Reply Brief, <u>see</u> Resp. Ex. H. On December 15, 2006, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion. <u>Pride v. State</u>, 944 So.2d 990 (Fla. 1st DCA 2006); Resp. Ex. I. The mandate issued on January 3, 2007.[2] Petitioner did not seek review in the United States Supreme Court.

On September 5, 2007, Petitioner filed a <u>pro se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. L at 1-84. In his request for post conviction relief (Rule 3.850 motion), Petitioner alleged that his counsel was ineffective because she failed to: object to the State's impermissible cross-examination (ground one); move to discharge Petitioner (ground two); argue a downward departure sentence (ground three); adequately cross-examine Detective Keith Clement relating to the description of the unknown black male in the search warrant (ground four); object to the State's impermissible direct examination (ground five); procure a

_____

[2] Online docket, <u>Larry Pride, Jr., v. State of Florida</u>, Case No. 1D05-4675, website for the First District Court of Appeal (http://www.1dca.org).

3

handwriting expert (ground six); and adequately investigate the search warrant (ground seven). <u>Id</u>. at 1-18. Moreover, as ground eight, he asserted that counsel's cumulative errors deprived him of a fair trial. <u>Id</u>. at 19. The State responded. <u>Id</u>. at 182-88. Incorporating the State's response and thereby making it a part of the order, the court, on December 10, 2007, denied the motion "for the reasons set forth in the State's Response . . . ." <u>Id</u>. at 189-96. The court denied Petitioner's <u>pro</u> <u>se</u> motion for rehearing on January 10, 2008. <u>Id</u>. at 200-02, 203.

Petitioner appealed the denial of his Rule 3.850 motion and filed a brief. Resp. Ex. M. The State filed a notice that it did not intend to file an answer brief. Resp. Ex. N. On November 4, 2008, the appellate court affirmed the denial per curiam, <u>see</u> <u>Pride v. State</u>, 993 So.2d 521 (Fla. 1st DCA 2008); Resp. Ex. O, and the mandate issued on January 29, 2009, <u>see</u> Resp. Ex. P.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. <u>See</u> 28 U.S.C. § 2244(d); Response at 2-3.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted).

4

"It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to

> extend a clearly established legal
> principle to a new context. An
> application of federal law cannot be
> considered unreasonable merely
> because it is, in our judgment,
> incorrect or erroneous; a state
> court decision must also be
> unreasonable. Questions of law and
> mixed questions of law and fact are
> reviewed <u>de</u> <u>novo</u>, as is the district
> court's conclusion regarding the
> reasonableness of the state court's
> application of federal law.
>
> <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted). In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." <u>Williams</u>, 529
> U.S. at 409, 120 S.Ct. at 1521. Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[3]
> 28 U.S.C. § 2254(e)(1).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1155-56 (11th Cir. 2010), <u>cert</u>.

<u>denied</u>, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

---

[3] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." <u>Bui v.
Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Harrington v. Richter</u>, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

> defendant by the Sixth Amendment." <u>Id</u>., at
> 687, 104 S.Ct. 2052.
>
>      With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different.[4] A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome."[5] <u>Id</u>., at 694, 104 S.Ct.
> 2052. It is not enough "to show that the
> errors had some conceivable effect on the
> outcome of the proceeding." <u>Id</u>., at 693, 104
> S.Ct. 2052. Counsel's errors must be "so
> serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable."
> <u>Id</u>., at 687, 104 S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

The two-part <u>Strickland</u> test applies to ineffective assistance claims concerning both the decision to accept a guilty plea offer and the decision to forgo a plea offer and stand trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>,

---

[4] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

[5] <u>See</u> <u>Davis v. Sec'y for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted) ("[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved.").

592 F.3d at 1163 (citation omitted). "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[6], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to

---

[6] Knowles v. Mirzayance, 556 U.S. 111 (2009).

a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that counsel (Katy Aguilar Harris) was ineffective because she failed to object to the State's impermissible cross-examination of Petitioner. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion. As to this claim, the State argued:

> The defendant alleges that his trial counsel was ineffective because she failed to object to impermissible cross examination by the State. The defendant took the witness stand. The defendant denied ever being at the residence where the cocaine was sold. The defendant's testimony opened the door for the State to present evidence that was excluded by the motion in limine. Based upon the defendant's testimony at trial, there wasn't a legal objection that could be made on his behalf that would have disallowed the impeachment evidence to be introduced.

Resp. Ex. L at 183. Ultimately, incorporating the State's reasoning, the trial court denied the Rule 3.850 motion with respect to this issue. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial of the Rule 3.850 motion as to this claim on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state

court adjudications required by AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit. The record supports the trial court's conclusion. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. Dingle v. Sec'y for Dept. of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question

is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007). Petitioner has failed to carry this burden.

Prior to trial, defense counsel filed two motions in limine. The first motion requested that the trial court prohibit the State from introducing any evidence relating to or testimony that "Detective Clement or any other Jacksonville Sheriff's Officer made any other drug sales transactions with Mr. Pride at any time or that he has previously been convicted of a drug sale involving any of the State's witnesses." Resp. Ex. B at 35. The second motion requested that the trial court prohibit the State from introducing any evidence relating to or testimony concerning the search of the house at 1313 Domas Drive or any evidence collected from that residence. <u>Id</u>. at 37. The defense argued that such evidence was not relevant, but even if relevant, it would be unduly prejudicial and amount to an impermissible attack on Pride's character. <u>Id</u>. at 35, 37.

As reflected by the pretrial discussion, defense counsel wanted to prohibit the evidence obtained from the January 5, 2005 execution of the search warrant (relating to evidence on count three) and prohibit evidence from the January 2, 2005 drug transaction, for which Pride had already been convicted in a separate trial. Tr. at 11. Thus, the defense's overall purpose

was to limit the testimony and evidence at trial to the December 30, 2004 drug transaction. The State did not object to the motions; the court granted the motions. Id.

At trial, the State properly limited its evidence to the December 30, 2004 drug transaction. The State introduced testimony about the December 30th transaction, an audio recording made during the transaction, and photographs showing how Pride looked on January 2nd and January 5, 2005. Id. at 23-46, 55-57. Petitioner testified, on direct examination, that he was at 1313 Domas Drive on January 5, 2005, when officers arrested him. Id. at 77-78. On cross-examination, Pride admitted that he had been to 1313 Domas Drive several times, but denied being there on January 2, 2005. Id. at 80. The State inquired: "So you were absolutely not there January 2nd, 2005, so if we have pictures of you at 1313 Dumas[7] Drive it wouldn't be you?" Id. Pride responded: "It wouldn't be me." Id. Requesting a sidebar, defense counsel objected. Id. The following colloquy transpired:

> [DEFENSE COUNSEL[8]]: Your Honor, we're just objecting based on the grounds it appears that the State is getting ready to introduce evidence of defendant's prior conviction on that date. And that was the motion in limine.

---

[7] While the trial transcript repeatedly refers to the street as "Dumas" Drive, the proper spelling is "Domas." See Resp. Ex. A at 1-2, Arrest and Booking Report.

[8] Assistant Public Defender Sissy Adams-Jones assisted Ms. Aguilar at the trial. Tr. at 2.

I don't believe that the door has been opened
for the State to introduce such evidence.

THE COURT: Well, I agree with you, looks
like that's what they're starting to do. But
I disagree with you that the door wasn't
opened because he said under oath he wasn't
there on that day. How can you open the door
any better? Were you there on that day? No.
If they have evidence he was there on that day
it's direct rebuttal of that. So I think the
door is open.

I don't know whether they're going to try
to do it with a conviction or just
photographs, I'm not sure how they'll get
evidence of the conviction in since there's no
judgment yet, but photographs or things like
that I think the door is open.

[DEFENSE COUNSEL]: I understand.

THE COURT: So I'll overrule the
objection. Let's bring the jury back in,
Barb.

Id. at 81.

Prior to the State's rebuttal, the court heard argument
relating to the State's request to admit two exhibits from the
prior trial relating to the January 2, 2005 drug transaction: a
photograph of Pride standing at a doorway, and a piece of paper
with a phone number and "Black" written on it. Id. at 97-103. The
State argued:

I wanted to put on the record the photograph
that I did choose is just of the defendant in
a T-shirt standing in front of this door.
He's not handing anybody anything. His hand
is straight down by his side, it's just a
profile picture of the defendant. I did not
choose the ones where he's handing crack to
the officer. This is just a photograph of the

14

> defendant that the detective is going to
> testify to that he was there.

Id. at 101. Overruling the defendant's objections, see id. at 102,

the trial judge explained:

> Well, I really don't think under the
> circumstances that the jury will see it that
> this photograph is prejudicial at all, it's
> certainly not unfairly prejudiced [sic]. It's
> prejudicial only to the extent that it rebuts
> that he said he wasn't there on that day, but
> it's not unfairly prejudicial because I'm not
> going to leave anything on it that talks about
> the other trial and it doesn't show him
> committing any other bad acts. It just shows
> him being there on that day if the jury
> believes the testimony the photographs were
> taken on that day.

Id. at 101.

Given the record, counsel's performance was within the wide

range of professionally competent assistance. Contrary to Pride's

assertions, the State did not violate the trial court's ruling on

the motions in limine, and the State's introduction of testimony

and evidence to impeach Pride was not improper. Moreover, defense

counsel repeatedly objected to the introduction of such evidence,[9]

which the trial court admitted over her objections. Id. at 81, 94-

103, 105-07, 113, 114, 115-116.

Even assuming arguendo deficient performance by defense

counsel, Petitioner has not shown prejudice. Petitioner has not

shown that a reasonable probability exists that the outcome of the

---

[9] See Tr. at 113 (admission of a photograph of Pride), 114-15
(admission of note with the name "Black" and a phone number).

case would have been different if the photograph and note had not been admitted.   Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## B. Ground Two

As ground two, Petitioner claims that counsel was ineffective because she failed to request a downward departure sentence based on "sentence manipulation" by the police.   Petition at 16.   As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.   The State argued, in pertinent part:

> The defendant alleges that his trial counsel was ineffective because [she] failed to argue a downward departure. The defendant alleges that the police engaged in sentence manipulation because they didn't arrest him the first time he sold drugs to them. Instead the police bought drugs from the defendant a second time and executed a search warrant on his residence.   The defendant's allegations are <u>ridiculous</u>.   There is no legal prohibition against the police conducting a long term investigation.   There isn't a legal basis for his counsel to argue for a downward departure because the defendant chose to commit multiple crimes.

Resp. Ex. L at 183.   Incorporating the State's response, the trial court ultimately denied the Rule 3.850 motion with respect to this issue based on the State's above-quoted argument. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post

conviction relief on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit. The record supports the trial court's conclusion. Given the record, Petitioner has not shown that the officers were targeting him with the intent to increase his sentence. Detective Clement testified: "We went to that residence on D[o]mas Drive to meet a subject named Shorty which was later identified as Roosevelt Baker." Tr. at 27, 47-48. Counsel's failure to request a downward departure sentence based on "sentence manipulation" by the detectives was not unreasonable since there was no arguable basis for such a request.

Moreover, the trial court sentenced Pride, as a habitual felony offender, based on two prior felony convictions: a possession of cocaine conviction (Madison County), and a sale or delivery of cocaine conviction (Suwannee County). Sentencing Tr. at 82. His sentence was harsh due to his extensive criminal history. Counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had argued for a downward departure based on sentence manipulation by the police. Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## C. Ground Three

As ground three, Petitioner claims that counsel was ineffective because she failed to obtain a handwriting expert to compare Pride's handwriting to the handwriting on the note with the phone number. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion. The State argued, in pertinent part:

> The defendant alleges that his trial counsel was ineffective for failing to procure a handwriting expert. However, the defendant was seen on video writing his number down for

> the detective.[10]   There is no way that a
> handwriting expert would have changed the
> outcome of the trial.

Resp. Ex. L at 184.  Ultimately, the trial court denied the Rule
3.850 motion with respect to this issue based on the State's
reasoning.  Following an appeal by Pride, the appellate court
affirmed the denial per curiam.

The appellate court may have affirmed the denial of the post
conviction motion on the merits.  If the appellate court addressed
the merits, there are qualifying state court decisions.  Assuming
so, this claim will be addressed applying the deferential standard
for federal court review of state court adjudications.  Having
reviewed the record and the applicable law, the Court concludes
that the state courts' adjudications of this claim were not
contrary to clearly established federal law, did not involve an
unreasonable application of clearly established federal law, and
were not based on an unreasonable determination of the facts in
light of the evidence presented in the state court proceedings.
Thus, Petitioner is not entitled to relief on the basis of this
claim.

---

[10] At the May 17, 2005 trial on count two (January 2, 2005 drug
transaction), the State had played a video recording of the drug
transaction for the jury.  See Case No. 3:09-cv-519-J-32JBT,
Respondents' Exhibits (Doc. #18), Exhibit C, Transcript of the Jury
Trial, at 39, 58-60, 64-65.  A few months later, at the August 10,
2005 trial on count one (December 30, 2004 drug transaction), the
State played an audio recording of the drug transaction.  Tr. at
34-40, 56.

Moreover, even absent a decision entitled to deferential review under AEDPA, this Court finds this challenge to be without merit. The trial court's conclusion is fully supported by the record. At trial, Pride testified that he never wrote a phone number down for the police. Tr. at 91. Detective Clement testified: "I got ready to leave [on December 30th] and that's when Troy asked Mr. Pride for -- if I could get his phone number. And I asked him if it was cool to get his phone number. And he told Troy that he could give it to me." Id. at 31. Clement confirmed that he got the phone number from Troy, not from Pride, on December 30th. Id. at 54, 119-20. On rebuttal, Detective Hollins testified that, when he and Clement returned to the Domas Drive residence on January 2, 2005, Pride wrote down a contact phone number: "I asked him for the phone number in case I wanted to come back. . . . Yes, he wrote it down." Id. at 114.

Katy Aguilar also represented Pride at the May 17, 2005 trial on count two, which related to the January 2, 2005 drug transaction. See Case No. 3:09-cv-519-J-32JBT, Respondents' Exhibits (Doc. #18), Exhibit C, Transcript of the Jury Trial, at 2. At that trial, the jury viewed the video recording that Detective Hollins had taped while wearing a concealed video camera for the January 2nd drug buy. Id. at 39, 58-60, 64-65. As the State played the video recording, the prosecutor questioned Detective Hollins.

[PROSECUTOR]: Who are you referring to as boss man?

[HOLLINS]: Detective Clement.

[PROSECUTOR]: What is the defendant doing right here?

[HOLLINS]: He is writing his phone number down.

[PROSECUTOR]: Can you point out to the jury the defendant's hand?

[HOLLINS]: Right there (indicating).

[PROSECUTOR]: Is that the phone number you held up to the camera?

[HOLLINS]: Yes. Yes, it is.

[PROSECUTOR]: What is the defendant saying to you then?

[HOLLINS]: He told me to call him any time.

Id. at 64.

Since Aguilar had represented Pride just a few months before at the May 17th trial on count two, and therefore had seen Detective Hollins' January 2, 2005 video recording and heard Hollins' testimony relating that Pride had written down a phone number for Hollins, counsel's failure to engage a handwriting expert was not unreasonable. Petitioner has failed to overcome the strong presumption in favor of the competence of defense counsel. Given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Pride has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had procured a handwriting expert to compare Pride's handwriting to that on the handwritten note. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## D. Ground Four

As ground four, Petitioner claims that counsel was ineffective because she failed to file a motion for discharge (to dismiss the charges) based on a statement in the January 5, 2005 search warrant that an unknown black male had sold Detective Clement cocaine from the house at 1313 Domas Drive within the past ten days. Petitioner raised this claim in his Rule 3.850 motion. The State argued, in pertinent part:

> The defendant alleges that his trial counsel was ineffective because she failed to file a motion to dismiss the charges. The defendant has failed to articulate a legally valid claim that his lawyer could have filed a motion. The defendant states that there was a problem with the search warrant. None of that evidence was introduced in either trial.

Resp. Ex. L at 183. Ultimately, the trial court denied the Rule 3.850 motion, and following Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Given the record, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had moved for discharge based on meritless grounds. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## E. Ground Five

As ground five, Petitioner claims that counsel was ineffective because she failed to adequately cross-examine Detective Clement

about his description of the unknown black male in the search warrant. Pride asserts that Clement, in describing the unknown black male in the search warrant, did not include that the individual had gold teeth. Having gold teeth, Pride opines that Detective Clement misidentified him as the perpetrator since Clement would have included the characteristic of gold teeth in his description of the offender who had sold him drugs on December 30th. Petitioner raised this claim in his Rule 3.850 motion. With respect to this issue, the State asserted:

> The defendant alleges that his trial counsel was ineffective because she failed to cross examine the lead narcotics detective about the search warrant. Again, the search warrant was not introduced in the trial and neither was any of the evidence obtained in the warrant. Defense counsel filed a motion in limine that was granted to exclude the mention of the warrant. It would not make any sense for defense counsel to cross examine the detective about a matter that was never presented to the jury.

Resp. Ex. L at 184. Ultimately, the trial court denied the Rule 3.850 motion based on the reasons expressed by the State as to this claim. Following Pride's appeal, the appellate court affirmed the denial per curiam.

The appellate court may have affirmed the denial of the post conviction motion on the merits. If the appellate court addressed the merits, there are qualifying state court decisions. Assuming so, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Having

reviewed the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even absent a decision entitled to deferential review under AEDPA, this Court finds this challenge to be without merit. The trial court's conclusion is fully supported by the record. Given the record, there was no reason for counsel to ask Clement about Pride's gold teeth. Clement testified that the individual known as "Black" who sold him the cocaine "didn't speak much." Tr. at 50. Moreover, since there were photographs admitted into evidence, see id. at 42-44 (January 5th photograph), 112-13 (January 2nd photograph), defense counsel, in closing arguments, reminded the jury to view those photographs to determine whether Pride was the one who had sold cocaine to Detective Clement on December 30th.

> Detective Hollins told us that he actually took this photograph on January the 2nd. Look at the photograph carefully and look at the photograph that was entered into evidence that was taken on January the 5th. and you decide whether these even appear to be the same person.

> . . . .

> Now, the State showed you a picture in
> reference to Mr. Pride. And they've indicated
> that this gentleman here was Mr. Pride. We're
> saying this gentleman here is not Mr. Pride.
> This gentleman here looks substantially
> different than Mr. Pride. And Mr. Pride
> indicated this gentleman here was not him.

Id. at 127, 147. Given the record, counsel's representation was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## **F. Ground Six**

As ground six, Petitioner claims that counsel was ineffective because she failed to object to the State's impermissible direct examination of Detective Hollins, as a rebuttal witness. Petitioner raised this claim in his Rule 3.850 motion. The State stated, in pertinent part:

> The defendant alleges that his trial
> counsel was ineffective because she failed to
> object to the State asking questions regarding
> defendant's appearance. . . . At the time of
> trial, the defendant changed his appearance.
> There isn't a legal basis to object to
> questions regarding identification of the
> defendant.

Resp. Ex. L at 184. Ultimately, the trial court denied the Rule 3.850 motion, and on Petitioner's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits. If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit. This claim is a continuation of Pride's assertions under ground one in that he again asserts that the State violated the trial court's ruling on the motions in limine and therefore counsel should have objected. Pride states that counsel should have objected to the following testimony of Detective Hollins, the State's rebuttal witness.

> [PROSECUTOR]: Does [Pride] look -- did he
> look the same back on January 2nd, 2005, when
> you met him as he does today in court?

27

[HOLLINS]: No, he do[es] not.

[PROSECUTOR]: What's the difference?

[HOLLINS]: He had, like, slight beard and he had dreads.

[PROSECUTOR]: Who introduced you to the defendant?

[HOLLINS]: Detective Clement.

[PROSECUTOR]: How did he introduce you?

[HOLLINS]: He introduced me, he said we work together.

[PROSECUTOR]: What name did he refer to the defendant as?

[HOLLINS]: Black.

[PROSECUTOR]: Was that a nickname?

[HOLLINS]: Yes.

[PROSECUTOR]: Was a photograph taken of the defendant at the door of 1313 Domas Drive on January 2nd, 2005?

[HOLLINS]: Yes, it was.

[PROSECUTOR]: Was that photograph taken by you?

[HOLLINS]: Yes, yes, ma'am.

[PROSECUTOR]: Was it an undercover device that you took it with?

[HOLLINS]: Correct, undercover device.

[PROSECUTOR]: Did Mr. Pride have any idea that you were taking his picture?

[HOLLINS]: No, he did not.

> [PROSECUTOR]: I'm showing you what's been marked for identification as State's Exhibit H, do you recognize this?
>
> [HOLLINS]: Yes.
>
> [PROSECUTOR]: What do you recognize it as?
>
> [HOLLINS]: Mr. Pride at the door.

Tr. at 111-13. Contrary to Pride's assertion, counsel again objected based on her previous objections.[11] Id. at 113. Thus, counsel's representation was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## G. Ground Seven

Pride claims that counsel's cumulative errors, as set forth in grounds one through six, deprived him of a fair trial. He raised this claim in his Rule 3.850 motion, and trial court denied the Rule 3.850 motion with respect to this claim. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Therefore, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by

---

[11] See Tr. at 94-103.

AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. They were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit.

> As set forth above, [Petitioner] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial. See Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000), cert. denied, 531 U.S. 849 (2000). Pride's cumulative error claim "fails in light of the absence of any individual errors to accumulate." Morris v. Sec'y, Dept. of Corr., No. 09-15471, 2012 WL 1370848, *14 n.3 (11th Cir. Apr. 20, 2012). Thus, Petitioner is not entitled to relief on the basis of this claim.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail. <u>Knowles</u>, 556 U.S. at 123. Accordingly, for these reasons, the Amended Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. #13) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of May, 2012.

**MARCIA MORALES HOWARD**
United States District Judge


sc 5/3
c:
Larry Pride, Jr.
Ass't Attorney General (Hill)